# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, INC., <br>     Debtor | Case No.: CV 17-7436 DSF <br><br> Bankruptcy No.: 2:16-17463 ER |
| CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, <br>     Appellant, <br><br> v. <br><br> GARDENS REGIONAL HOSPITAL AND MEDICAL CENTER, INC., <br>     Appellee. | MEMORANDUM OPINION |

This appeal arises from the bankruptcy court's (Robles, B.J.) September 25, 2017 order denying Appellant California Department of Health Care Services' (DHCS) Motion for Allowance of an Administrative Priority Claim. For the reasons stated below, the Bankruptcy Court Order is AFFIRMED.

## I.    FACTS AND BACKGROUND

On June 6, 2016, Gardens Regional Hospital and Medical Center (the Debtor) filed a voluntary petition for relief under

Chapter 11 of the United States Bankruptcy Code. ER 160.[1] The Debtor operated a 137-bed general acute care hospital located in Hawaiian Gardens, California (the Hospital). Id. The Hospital served a high number of indigent patients and was operated as a non-profit entity. Id.

Prior to the closure of the Hospital, the Debtor provided services to patients under the California Medical Assistance Program (Medi-Cal). Id. In exchange for providing these services, the Debtor received reimbursements from DHCS, the state agency charged with administering Medi-Cal. Id.

Medi-Cal costs are shared between the state and federal government. Id. To help cover its share of Medi-Cal costs, California enacted the Medi-Cal Hospital Reimbursement Improvement Act of 2013, codified at Cal. Welf. & Inst. Code §§ 14169.50-14169.76 (West 2017). Id. It requires most general acute care hospitals to pay a quarterly Hospital Quality Assurance Fee (HQA Fee), which is collected by DHCS and is assessed quarterly. Id.

On March 2, 2015, the Debtor stopped paying its quarterly HQA Fees. Id. 3 (Beshara Decl.) ¶ 6. To recover the unpaid fees, DHCS began withholding payments owed to the Debtor. Id. ¶ 9. The prepetition HQA Fee debt has been fully recovered. Id. ¶ 10. Since the Petition, DHCS has withheld $4,306,426.18 from the Debtor and has applied the funds to unpaid HQA Fees. Id. ¶ 12. Even after the withholding, the Debtor's HQA Fee delinquency is $2,550,667.39—the amount at issue here on appeal. Id. ¶ 13.

On June 26, 2017, DHCS filed its Motion to Allow Payment of the Quarterly Assurance Fee Debt as Administrative Priority

---

[1] ER refers to the submitted excerpts of the bankruptcy court record, all of which appear uncontested.

Claim. On September 25, 2017, the Bankruptcy Court denied the motion, finding that: (1) for bankruptcy purposes, the Debtor's HQA liability is a fee, not a tax; and (2) even if the liability is a tax, DHCS's claim is not entitled to administrative priority because it arose prepetition. In re Gardens Reg'l Hosp. and Med. Ctr., Inc., 573 B.R. 811 (Bankr. C.D. Cal. 2017). This appeal followed.

## II. LEGAL STANDARD

In considering a bankruptcy appeal, "findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed *de novo*." Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000). The Court "must accept the bankruptcy court's findings of fact, unless [it] is left with the definite and firm conviction that a mistake has been committed." In re JTS Corp., 617 F.3d 1102, 1109 (9th Cir. 2010) (citations omitted).

## III. DHCS'S CLAIM IS NOT ENTITLED TO ADMINISTRATIVE PRIORITY BECAUSE IT AROSE PREPETITION[2]

Section 503(b)(1)(B)(i) accords administrative priority to a claim arising on account of "any tax incurred by the estate . . . ." 11 U.S.C. § 503(b)(1)(B)(i). A tax claim arising prepetition is not entitled to administrative priority. See In re Kadjevich, 220 F.3d 1016, 1019-20 (9th Cir. 2000) ("[O]nly *post-petition* debts can be treated as administrative expenses; *pre-petition* debts may not be granted administrative-expense priority.") (emphasis in original). The Bankruptcy Court concluded DHCS's claim would not be

---

[2] Because the Court concludes the claim arose prepetition, it need not address whether the HQA fee is a tax. The Court assumes the Bankruptcy Court correctly decided that issue for the purpose of this Order.

3

entitled to administrative priority because it arose prepetition. The Court agrees.

Federal law governs when a claim arises. See Seigel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 532 (9th Cir. 1998). Under § 101(5)(A), a claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" "This broadest possible definition of 'claim' is designed to ensure that all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case." In re Jensen, 995 F.2d 925, 929 (9th Cir. 1993) (citations omitted; emphasis added). This broad definition serves two primary goals of bankruptcy: to ensure that all creditors are treated equitably and to secure a fresh start for the debtor.

The Ninth Circuit has adopted the "fair contemplation" test to determine whether a claim arose prepetition. Under this test, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." In re SNTL Corp., 571 F.3d 826, 839 (9th Cir. 2009) (citation omitted). For instance, the Ninth Circuit has held that when a state environmental regulatory agency was aware that the groundwater at the debtors' site was contaminated before they filed their petition, a contingent claim for cleanup costs was in the "fair contemplation" of the state at the time the debtors filed their Chapter 7 petition. In re Jensen, 995 F.2d at 929.

Here, the record supports the Bankruptcy Court's conclusion that DCHS could have fairly or reasonably contemplated its HQA Fee claim prior to Debtor's Petition. As in In re SNTL Corp., In re Jensen, and other Ninth Circuit cases, at the time the Petition was filed, the debt was "absolutely owed" under the applicable

4

state law as well as the Medi-Cal Provider Agreement that Debtor executed with DCHS. See ER 2, Ex. A. That the liability did not become due until postpetition does not alter the fact that the claim arose from prepetition obligations and agreements and so existed prepetition. "So long as the right to collect the fees existed pre-petition, the fact that the fees were actually incurred during the postpetition period is not relevant to the determination of whether the creditor has an allowable pre-petition claim for the fees." In re SNTL Corp., 571 F.3d at 843 (citation omitted). Put another way, even if DHCS did not know, prior to the Petition, the amount of its claim, it could fairly contemplate the existence of its claim. This is sufficient to satisfy the fair contemplation test.

The Court also agrees with the Bankruptcy Court that DHCS had a better estimate of its claim than the claimant in Jensen and other cases. It found that pursuant to the Reimbursement Improvement Act, HQA Fees are assessed based on a DHCS-developed fee model (Fee Model) that must be approved by the Centers for Medicare & Medicaid Services (CMS). Gardens Regional, 573 B.R. at 819 (citing Cal. Welf. & Inst. Code §§ 14169.51(m), 14169.52(c), 14169.52(e), and 14169.53(f)); ER 151 (Beshara Decl.) ¶¶ 12-14. The Bankruptcy Court went on to find that the Fee Model in this case was approved by CMS prepetition, in January 2015, and that once approved, DHCS then calculated the HQA Fees owed by each hospital, using data that the hospitals are required to supply. Id. (citing Beshara Decl. ¶ 15). Although the Debtor's obligation could change, DHCS had a fairly clear picture as to the amount of its claim.

DHCS makes several arguments in opposition. First, citing In re Ybarra, 424 F.3d 1018, 1027-28 (9th Cir. 2005), it argues the fair contemplation test does not apply to situations in which the debtor takes an affirmative, voluntary action during the postpetition period. Mot. at 29. Ybarra, however, concerned

5

discharge of debts, not administrative priority, a difference the court emphasized:

> The central question in determining whether a claim is granted administrative expense priority is whether the third party should be paid at the expense of the debtor's existing unsecured creditors. By contrast, in the discharge context, the question is whether the debtor should be released from pre-petition debts so that she can be given a "fresh start." The discharge inquiry involves the existence of personal liability, while administrative expense priority concerns the distribution of assets from a limited pool. Even if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free litigation at others' expense. Personal liability for fees incurred through the voluntary pursuit of litigation initiated post-petition is more consistent with the purpose of discharge. This policy difference supports our conclusion that the administrative expense priority cases do not control our determination of whether a claim is pre-petition or post-petition in the discharge context.

Id. at 1026 (citations omitted). Given the differences between discharge and administrative priority, the Court declines to apply Ybarra here.

Second, DHCS argues HQA Fee liability should be considered postpetition debt because the Debtor continued to operate the hospital, citing In re Saint Catherine Hospital of Indiana, LLC, 511 B.R. 117, 126 (S.D. Ind. 2014) (holding Indiana's Health Assurance Fee was a postpetition debt because "the 'conduct' triggering the liability was [hospital's] continued

6

operation as an eligible hospital."). [3] The Seventh Circuit, however, later rejected the district court's conclusion:

> That St. Catherine's continued operation as an eligible hospital on July 1, 2012 may have been required in order for the 2013 HAF to be assessed does not change our analysis. This fact would simply make the claim "contingent" upon the hospital's continued eligibility on July 1, 2012. A "contingent" claim is one conditioned upon some future event that is uncertain.
>
> [A]ssuming [HAF assessments are triggered by a hospital's ongoing eligibility for the program], it would simply mean that had St. Catherine ceased to be an eligible hospital prior to the beginning of the fiscal year 2013, a contingency for its 2013 HAF liability would not have been met. It would not mean that the underlying claim did not already exist.

Saint Catherine Hosp. of Ind., LLC v. Ind. Family and Soc. Servs. Admin., 800 F.3d 312, 317 (7th Cir. 2015).[4] Similarly here, DHCS's Fee Model (which determined HQA Fee Cycles 11 and 12), along with CMS's approval, all occurred before Debtor filed for bankruptcy. That the Debtor continued the operation does not mean DHCS could not "fairly or reasonably contemplate" the claim's existence.

Third, DHCS contends that the HQA Fee was incurred postpetition as a matter of equity, because after the Petition was filed, Debtor refused to pay HQA Fees but still received HQA

---

[3] The failure of DHCS to note that this case had been overruled is egregious conduct that should not be repeated.

[4] Instead of the "fair contemplation" test, the Seventh Circuit applies the "conduct test," whereby the date of the claim is determined by the date of the conduct giving rise to the claim. See Saint Catherine Hospital, 800 F.3d at 315-16 (adopting the conduct test).

7

payouts.  DHCS overstates this argument, considering the Bankruptcy Court has already authorized the State of California to withhold a percentage of Medi-Cal payments owed the Debtor for the purpose of recovering unpaid HQA Fees.  See In re Gardens Reg'l Hosp. and Med. Ctr., Inc., 569 B.R. 788, 794-99 (Bankr. C.D. Cal. 2017).  So far, DHCS has withheld at least $4,306,426.18 from the Medi-Cal Payments owed the Debtor.  ER 3 ¶ 12.  In any event, DHCS's argument is undercut by the purpose of administrative priority status, which is to encourage third parties to contract with the bankruptcy estate for the benefit of the estate as a whole.  See In re Kadjevich, 220 F.3d at 1019 (noting that the purpose of granting priority to postpetition debts is "so that third parties will risk providing the goods and services that are necessary for a struggling debtor to reorganize"); see also In re DAK Indus., Inc., 66 F.3d 1091, 1097 (9th Cir. 1995) ("Payment of administrative expenses allows the debtor to secure goods and services necessary to administer the estate, which ultimately accrues to the benefit of all creditors.").  Giving DHCS's claim priority, then, may not be equitable because it could frustrate the economic administration of the estate, undermining both prepetition and postpetition creditors alike.

Finally, DHCS argues that its right to payment should be treated as postpetition because Debtor failed to comply with applicable non-bankruptcy law after filing for bankruptcy.  In support, DHCS primarily relies on In re Bill's Coal Co., 124 B.R. 827 (D. Kan. 1991) and In re Motel Investments, Inc., 172 B.R. 105 (M.D. Fla. 1994), which deal with fines or penalties imposed for postpetition misconduct.  The claim here is neither a fine nor a penalty levied on Debtor for postpetition conduct; rather, it is a liability that arose from prepetition legislation imposing obligations on the Debtor, which are merely contingent on the hospital continuing to operate postpetition.

8

DHCS also cites O'Loghlin v. County of Orange, 229 F.3d 871, 876 (9th Cir. 2000), in which the Ninth Circuit held that a plaintiff could recover damages for the defendant's alleged post-discharge violation of the ADA's reasonable accommodation provisions, despite the fact that defendant's debts had been discharged. Again, cases such as O'Loghlin are inapposite because they deal with discharge, not administrative priority. In any event, the facts in O'Loghlin are unique and provide no assistance to DHCS.

## IV. CONCLUSION

DHCS is not entitled to administrative priority because any claim it may have on account of the Debtor's unpaid HQA Fee obligation arose prepetition. The Bankruptcy Court Order is AFFIRMED.

IT IS SO ORDERED.

Date: May 11, 2018

Dale S. Fischer
United States District Judge